
FILED
AUG 15 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRAVIS LEE BONDURANT,<br><br>    Petitioner,<br><br>v.<br><br>TAMMY FOSS, Warden,<br><br>    Respondent. | Case No.: 19cv0528-BEN (BLM)<br><br>**ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY** |

    Travis Lee Bondurant is a California prisoner proceeding with a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254, challenging his San Diego County Superior Court conviction for possession of a controlled substance in jail. (ECF No. 1 at 1-2.) He claims his federal constitutional rights were violated as a result of the denial of his motion to sever his trial from the trial of his codefendant, arguing he was deprived of the ability to call his codefendant as a witness, who would have testified at a separate trial that the controlled substance found on Petitioner and in their shared cell belonged to him, and their mutually antagonistic defenses prevented the jury from acquitting Petitioner once they found his codefendant not guilty. (Id. at 6, 14-30; ECF No. 1-2 at 1-31.)

    Respondent has filed an Answer and a Notice of Lodgment of the state court record. (ECF Nos. 5-6.) Respondent contends the Ninth Circuit has held there is no "clearly

established federal law" regarding the misjoinder of defendants, and federal habeas relief is therefore unavailable because the state court adjudication of the claim cannot be contrary to, or involve an unreasonable application of, clearly established federal law within the meaning of 28 U.S.C. § 2254(d)(1). (ECF No. 5 at 6-7, citing Collins v. Runnels, 603 F.3d 1127, 1131-32 (9th Cir. 2010) (holding that because the Supreme Court had not yet addressed under what conditions a failure to sever defendants in a state trial could rise to the level of a federal due process violation, there is no clearly established federal law within the meaning of 28 U.S.C. § 2254(d)(1) as to that issue).)

Petitioner has filed a Traverse. (ECF No. 7.) He acknowledges the holding in Collins that there is no clearly established federal law requiring severance based on mutually antagonistic defenses, but argues: (1) Collins was wrongly decided, (2) Collins is not on point where, as here, exculpatory evidence was excluded as a result of the failure to sever, and (3) there is clearly established federal law providing for federal habeas relief where a defendant was deprived of the right to call and confront a witness and where a trial was fundamentally unfair. (Id. at 5-8.) He also argues that even in the absence of clearly established federal law, his Petition may be granted under 28 U.S.C. § 2254(d)(2) because the state court adjudication of his claim involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. (Id. at 8-9.)

As set forth herein, the Court finds that Petitioner is not entitled to federal habeas relief because the state court adjudication of his claim is objectively reasonable within the meaning of 28 U.S.C. § 2254(d). The Court also finds that even if Petitioner could satisfy that standard, no federal constitutional violation resulted from the denial of his severance motion, and any alleged error is harmless. Finally, the Court finds a Certificate of Appealability is not warranted.[1]

---

[1] Although this case was randomly referred to United States Magistrate Judge Barbara L Major pursuant to 28 U.S.C. § 636(b)(1)(B), the Court has determined that neither a Report and Recommendation nor oral argument are necessary for the disposition of this matter. See S.D. Cal. Civ.L.R. 71.1(d).

I.  **State Court Proceedings**

A two-count San Diego Superior Court felony complaint charged Petitioner and codefendant Gary Garrett with one count of conspiracy to sell methamphetamine and one count of possession of methamphetamine in jail. (Lodgment No. 2, Clerk's Tr. ["CT"] at 7-12.) A joint trial was held where the presentation of the prosecution evidence lasted less than one day, after which the conspiracy count was dismissed against both defendants for lack of evidence of an agreement. (CT 127-33; RT 391-92.) The following summary of the prosecution evidence is taken from the state appellate court opinion on direct appeal:

> Deputy Sheriff Francis Gardiner was assigned to monitor the fourth floor of the San Diego County Jail where Bondurant and Garrett resided. Upon arrival, Bondurant and Garrett were issued laundered uniforms that had been worn by other inmates. Inmates on this floor are allowed several hours during the day where they can access the open cells of other detainees. During Gardiner's shifts, he observed that Bondurant and Garrett were consistently within feet of each other. Gardiner also noticed Bondurant and Garrett seemed hyperactive and nervous, and that both men had dilated pupils. Gardiner decided to monitor Bondurant and Garrett more closely because their behavior suggested they were under the influence of a controlled substance.
>
> Two days later, Gardiner saw Garrett make two phone calls with Bondurant nearby. After Garrett hung up, Gardiner listened to recordings of the calls and discovered Garrett had asked his girlfriend to "do a three-way" and "go pick up 60 bucks." Gardiner also heard Garrett discuss taking the blame for crimes his girlfriend might be charged with. Based on Gardiner's experience, the term "three way" refers to phone calls commonly used by inmates to organize drug deals. As a result, Gardiner suspected one or both of the men were in possession of methamphetamine and organized a search of the men and their shared cell.
>
> When Bondurant removed his clothing during the search, Gardiner saw a bindle roll out of Bondurant's pants and underwear. The bindle contained 2.63 grams of methamphetamine. Gardiner did not find any contraband on Garrett during his search. Then, the search of Bondurant and Garrett's cell revealed a device used to inhale narcotics, a lighter, and two stacked paper cups with 0.25 grams of methamphetamine in the bottom cup.

(Lodgment No. 6, People v. Bondurant, No. D071200, slip op. at 2-3 (Cal.Ct.App. 2017).)

Both defenses rested without presenting evidence. (CT 140.) Garrett's counsel argued in closing that because the methamphetamine was found on Petitioner it was logical to believe it belonged to him rather than Garrett, on whose person no drugs were found, and that he could not have seen the methamphetamine in the cup because it was covered. (RT 557-58.) Petitioner's counsel argued that: (1) the methamphetamine was first seen on the cell floor, not in Petitioner's possession, and even if it fell out of his clothing he was wearing jail-issue clothing previously worn by other inmates, and (2) there was a discrepancy whether there was anything on the floor before the defendants were brought to the holding cell to be searched, which had remained open and available to other inmates during the day. (RT 547-53.) The jury found Petitioner guilty of possession of a controlled substance in jail and found Garrett not guilty. (CT 140-43.) Petitioner was sentenced to three years in prison, doubled to six years due to a prior conviction. (CT 147.)

Petitioner filed a pre-trial motion to sever the trials, arguing that: (1) Garrett had made incriminating statements on two recorded jail telephone calls in which he referred to Petitioner, which constituted the sole evidence on the conspiracy count and would prejudice Petitioner if admitted at a joint trial, (2) to the extent Garrett intended to deny the methamphetamine was his, they have antagonistic defenses because Petitioner contended that the methamphetamine belonged to Garrett, and (3) Garrett told the defense team he was willing to accept sole responsibility for possession of the methamphetamine, and separate trials would permit Petitioner to call Garrett as a witness to so testify. (CT 28-38, 107.) The trial judge held a hearing on the motion to sever, on which Garrett's counsel took no position, and denied the motion after redacting any reference to Petitioner in Garrett's recorded jail calls. (CT 105-54, 205.)

In his direct appeal, Petitioner claimed that the trial judge abused her discretion in failing to sever the trial because: (1) Garrett had made a bona fide proffer to the defense that he was willing to testify at a separate trial for Petitioner that the methamphetamine belonged to Garrett, (2) they had antagonistic defenses because if the jury accepted Garrett's defense that he was unaware the methamphetamine was in the cell it would have

4

19cv0528-BEN (BLM)

had no choice but to find Petitioner guilty, which, along with the denial of the ability to present Garrett's proffered statement as exculpatory evidence, violated his rights to due process under the Fifth and Fourteenth Amendments, and (3) the error was not harmless beyond a reasonable doubt because it is reasonably likely Petitioner would have been found not guilty but for the failure to sever the trials. (Lodgment No. 3 at 21-35.) The state appellate court denied the claim on the merits and affirmed the conviction in all respects. (Lodgment No. 6, People v. Bondurant, No. D071200, slip op. at 4-8.) The same claim was presented in a petition for review filed in the California Supreme Court, which was summarily denied. (Lodgment Nos. 7-8.)

## II. PETITIONER'S CLAIM

Petitioner's right to due process under the Fifth and Fourteenth Amendments was violated by the denial of his motion to sever his trial from the trial of his codefendant "because it was very reasonably likely that the codefendant would give testimony exonerating Petitioner in a separate trial . . . by taking full responsibility for and claim ownership of the methamphetamine found on Petitioner and in their shared cell and explain that it was not used, sold, or possessed by Petitioner," and because the jury's "acceptance of the codefendant's antagonistic defense precluded them from finding Petitioner not guilty." (ECF No. 1 at 6, 14-30; ECF No. 1-2 at 1-31.)

## III. DISCUSSION

### A. Standard of Review

Under the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, in order to obtain federal habeas relief with respect to a claim which was adjudicated on the merits in state court, a federal habeas petitioner must demonstrate that the state court adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C.A. § 2254(d) (West 2019). Such a

5

19cv0528-BEN (BLM)

showing is a prerequisite to federal habeas relief, and even if § 2254(d) is satisfied a petitioner must show a federal constitutional violation occurred in order to obtain relief. Fry v. Pliler, 551 U.S. 112, 119-22 (2007); Frantz v. Hazey, 533 F.3d 724, 735-36 (9th Cir. 2008) (en banc).

A state court's decision may be "contrary to" clearly established Supreme Court precedent (1) "if the state court applies a rule that contradicts the governing law set forth in [the Court's] cases" or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). A state court decision may involve an "unreasonable application" of clearly established federal law, "if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407. In order to satisfy § 2254(d)(2), the factual findings relied upon by the state court must be objectively unreasonable. Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

### B. Petitioner is not entitled to federal habeas relief

Petitioner claims his federal due process rights were violated by the denial of his motion to sever, and that the state appellate court's rejection of his claim is contrary to, or involves an unreasonable application of, clearly established federal law, and involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. (ECF No. 1 at 6, 14-30; ECF No. 1-2 at 1-31.) Respondent answers that federal habeas relief is unavailable because the state court adjudication of the claim cannot be contrary to or involve an unreasonable application of clearly established federal law because the Ninth Circuit has held that there is no "clearly established federal law" regarding the misjoinder of defendants. (ECF No. 5 at 6-7.)

Petitioner replies by acknowledging that the Ninth Circuit has held there is no clearly established federal law requiring severance when a defendant and codefendant present mutually antagonistic defenses, but argues the Ninth Circuit is mistaken in that respect, and in any case there is clearly established federal law providing for federal habeas relief where

a joint trial denied him his right to call and confront a witness resulting in a fundamentally unfair trial, which is the case here because if there had been separate trials his codefendant could have testified that he was solely responsible for the controlled substance. (ECF No. 7 at 5-8.) He argues that even in the absence of clearly established federal law the Court can grant relief because the state court adjudication of his claim involves an unreasonable determination of the facts, something Respondent has failed to address. (Id. at 8-9.)

Petitioner presented this claim to the state supreme court in a petition for review on direct appeal which was summarily denied. (Lodgment Nos. 7-8.) He also presented it to the state appellate court on direct appeal. (Lodgment Nos. 3-5.) The Court will apply the provisions of 28 U.S.C. § 2254(d) to the last reasoned decision with respect to claim one, the state appellate court opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 803-06 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim [are presumed to] rest upon the same ground.") The state appellate court stated:

> Jointly charged defendants "must be tried jointly, unless the court order[s] separate trials." (§ 1098.) Defendants charged with "'common crimes involving common events'" present a "'classic case'" for a joint trial. (*Coffman, supra,* 34 Cal.4th at p. 40, quoting *People v. Keenan* (1988) 46 Cal.3d 478, 499–500 (*Keenan*).) The court, however, may grant severance "'in the face of an incriminating confession . . . conflicting defenses, or the possibility that at a separate trial a codefendant would give exonerating testimony.'" (*Coffman, supra,* at p. 40.) The court may also grant severance if "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants." (*Zafiro v. United States* (1993) 506 U.S. 534, 539.)
>
> A. Exonerating Testimony
>
> On a motion to sever based on exonerating testimony the court considers the following factors: (1) whether the movant desires the testimony, (2) whether the testimony will be exculpatory, (3) significance of the testimony, (4) whether the testimony is bona fide, (5) the likelihood the codefendant will testify, and (6) the effect on judicial administration and economy. (*People v. Isenor* (1971) 17 Cal.App.3d 324, 332 (*Isenor*).)

A claim of exonerating testimony is not bona fide if based on an unsupported assertion by the moving party. (*Isenor, supra*, 17 Cal.App.3d at p. 333.) Such testimony is unlikely when there is no substantial evidence in favor of the testimony or when testimony is offered in exchange for a favorable bargain. (*Id.* at p. 331; *People v. Conerly* (2009) 176 Cal.App.4th 240, 252.) However, testimony is likely when a codefendant makes multiple judicial statements to give testimony, or when codefendant's counsel represents the client will provide testimony. (*Isenor, supra*, at pp. 331–333, referencing *United States v. Echeles* (7th Cir. 1965) 352 F.2d 892 and *Byrd v. Wainwright* (5th Cir. 1970) 428 F.2d 1017.)

Here, the parties agree the first three factors are met but do not agree that Garrett's testimony was bona fide or likely, or that the effect on judicial economy supported the trial court's decision to deny Bondurant's motion. We conclude the suggestion of exonerating testimony was not bona fide or likely and that the joint trial supported judicial economy.

Bondurant asserts the suggestion Garrett's testimony was bona fide because Garrett made statements to a member of Bondurant's defense team. Bondurant contends this fact distinguishes his case from *Isenor, supra*, 17 Cal.App.3d 324, where the assertion of exonerating testimony was made to the defendant. However, like *Isenor*, there is no other evidence supporting the possible testimony by Garrett. Even though the statements were made to a member of Bondurant's defense team, there was no evidence presented at trial and Garrett's defense counsel did not comment on such testimony. Therefore, we find that the claim of possible testimony was not bona fide.

Bondurant also contends Garrett's testimony was likely because (1) Garrett's counsel did not advise Garrett not to give testimony, and (2) Garrett would avoid testifying about his phone calls. Garrett's counsel did not comment on the testimony, and despite not verbally advising Garrett not to testify, there is still minimal evidence any testimony was probable. Also, the possibility that Garrett would not have had to testify regarding his phone calls is not a significant factor in determining the likelihood of the testimony. Testimony is likely when multiple statements are made to judicial officers or made by defense attorneys representing the codefendant giving testimony. No similar evidence is present in this case so it was not an error to find the testimony unlikely.

Finally, trying Bondurant and Garrett together furthered judicial efficiency and economy. Garrett and Bondurant were tried for the same offenses under the same facts presenting a "'classic case'" for joint trials.

(*Coffman, supra*, 34 Cal.4th at p. 40, quoting *Keenan, supra*, 46 Cal.3d at pp. 499–500.) Because there was no assurance of Garrett's exonerating testimony, the trial court did not abuse its discretion in denying the motion to sever.

### B. Antagonistic Defenses

Bondurant also contends severance was required because Garrett's defense denying possession of the methamphetamine was antagonistic to Bondurant's own defense also denying possession. Severance is proper when antagonistic defenses are "irreconcilable" or "'where the acceptance of one party's defense will preclude the acquittal of the other.'" (*People v. Hardy* (1992) 2 Cal.4th 86, 168.) However, when there is sufficient independent evidence against the moving party, antagonistic defenses will not justify severance. (*Coffman, supra*, 34 Cal.4th at p. 41.)

Here, overwhelming independent evidence linked Bondurant to the crime. When Bondurant was searched a bindle of methamphetamine rolled from his pants, presenting strong evidence that he possessed the controlled substance. Bondurant argues that since he was issued recycled clothing it is probable another party was responsible for the drugs. Bondurant's contention is not reasonably probable because the clothes had been washed before they were given to him and the substance was found in his pants.

### III
### *PREJUDICE*

We conclude that Bondurant was not prejudiced in this case. There was sufficient evidence for the jury to find Bondurant guilty of possession of a controlled substance in jail. There is not a reasonable probability Bondurant would have received a better outcome if the severance had been granted given the weight of the evidence, the possibility of any exonerating testimony was neither bona fide nor likely. Further, even though Bondurant and Garrett had conflicting defenses, there was sufficient independent evidence linking Bondurant to the crime so severance was not proper. The trial court did not abuse its discretion and there is no prejudice in this case.

(Lodgment No. 6, <u>People v. Bondurant</u>, No. D071200, slip op. at 4-8.)

As the state appellate court correctly recognized, the United States Supreme Court has stated that severance should be granted when "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from

making a reliable judgment about guilt or innocence." Zafiro v. United States, 506 U.S. 534, 538 (1993). That Court has also stated that: "Improper joinder does not, in itself, violate the Constitution. Rather, misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." United States v. Lane, 474 U.S. 438, 446 n.8 (1986). However, the Ninth Circuit in Collins, which involved a joint trial of state court defendants with antagonistic defenses, found the quoted statements in Lane and Zafiro to be dicta because those courts addressed standards of joinder under Federal Rules of Criminal Procedure and did not involve a federal constitutional issue. Collins, 603 F.3d at 1131-32. The Ninth Circuit in Collins found that because the Supreme Court had not yet addressed under what conditions a failure to sever defendants in a state court trial could rise to the level of a due process violation under the United States Constitution, there is no clearly established federal law within the meaning of 28 U.S.C. § 2254(d)(1) as to that issue. Id. at 1132-33; see also Runningeagle v. Ryan, 686 F.3d 758, 774 (9th Cir. 2012) ("[T]here is no clearly established federal law requiring severance of criminal trials in state court even when the defendants assert mutually antagonistic defenses.")

Although Petitioner contends Collins and Runningeagle "are wrongly decided" and "are clearly in error" regarding whether Lane and Zafiro represent clearly established federal law (see Traverse at 6), this Court is bound by Ninth Circuit authority in that regard. In addition, although the Ninth Circuit has held in pre-AEDPA cases that a state prisoner can show a federal due process violation where the denial of a severance motion rendered a trial fundamentally unfair, see Bean v. Calderon, 163 F.3d 1073, 1084 (9th Cir. 1998), Featherstone v. Estelle, 948 F.2d 1497, 1503 (9th Cir. 1991), "circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,' . . . [and] cannot form the basis for habeas relief under AEDPA." Parker v. Matthews, 567 U.S. 37, 48-49 (2012), quoting 28 U.S.C. § 2254(d)(1).

Petitioner is correct that the Supreme Court has recognized that a fundamentally unfair state criminal trial can rise to the level of a federal due process violation. See e.g.

California v. Trombetta, 467 U.S. 479, 485 (1984) ("Under the Due Process Clause of the Fourteenth Amendment, criminal prosecutions must comport with prevailing notions of fundamental fairness.") However, "'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state court decision.'" White v. Woodall, 572 U.S. 415, 426 (2014), quoting Yarborough v. Alvarado, 541 U.S. 652, 666 (2004). Petitioner has not identified any case where the Supreme Court has applied the federal due process right to a fundamentally fair trial to severance motions, other than Zafiro and Lane (see Traverse at 5-6) which the Ninth Circuit rejected in Collins and Runningeagle as constituting clearly established federal law, and has identified no cases whatsoever where the Supreme Court has applied that right to severance motions in state criminal proceedings. Petitioner is entitled to relief under § 2254(d)(1) "if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." White, 572 U.S. at 427, quoting Harrington v. Richter, 562 U.S. 86, 103 (2011). Because there can be no fairminded disagreement as to whether a federal due process right to severance of trials in a state criminal trial has been "clearly established," the Court is prohibited from finding that the state court adjudication of Petitioner's claim is contrary to, or involves an unreasonable application of, clearly established federal law within the meaning of 28 U.S.C. § 2254(d)(1). White, 572 U.S. at 426-27 ("Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably *applies* this Court's precedent; it does not require state courts to *extend* that precedent or license federal courts to treat the failure to do so as error."); Collins, 603 F.3d at 1132; Runningeagle, 686 F.3d at 774. This Court therefore cannot grant relief under 28 U.S.C. § 2254(d)(1) because "AEDPA's carefully constructed framework 'would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.'" White, 572 U.S. at 426, quoting Yarborough, 541 U.S. at 666.

Furthermore, even if Petitioner is correct that clearly established federal law provides that a failure to sever trials in state court can rise to the level of a federal due

process violation if it has the effect of denying federally protected rights such as the right to present exculpatory evidence, to call and confront witnesses, or to a fundamentally fair trial, he has not demonstrated that the appellate court's adjudication of his claim resulted in an objectively unreasonable application of any federal law in those areas. Petitioner carries the "burden of demonstrating that the state court's denial of his severance motion rendered his trial fundamentally unfair." Grisby v. Blodgett, 130 F.3d 365, 370 (9th Cir. 1997). He contends his trial was fundamentally unfair because the denial of his severance motion prevented the jury from hearing Garrett's testimony that the methamphetamine was his and not Petitioner's, which violated his right to call Garrett as a witness and confront and cross-examine him. He also claims that due to their antagonistic defenses, once the jury found Garrett not guilty they had no choice but to find Petitioner guilty. The state court rejected those claims, finding that the possibility that Garrett would have testified at a separate trial that the methamphetamine belonged to him was "neither bona fide nor likely," and that there was "sufficient independent evidence linking [Petitioner] to the crime" to defeat his contention that the jury had no choice to convict him just because they acquitted Garrett. (Lodgment No. 6, People v. Bondurant, No. D071200, slip op. at 7-8.)

Petitioner has not rebutted the presumption of correctness afforded the factual finding by the state appellate court that he failed to show Garrett would have testified in his favor at a separate trial. See 28 U.S.C. § 2254(e)(1) (requiring "clear and convincing evidence" to rebut "a determination of a factual issue made by a State court.") The presumption of correctness of that finding is supported by the fact that neither Garrett nor his counsel stated in open court that he would take responsibility for the methamphetamine and by the fact he was found not guilty after his counsel argued that the methamphetamine in their shared cell was found partly in Petitioner's possession and partly hidden between two cups, but not in his possession. In any case, even if Garrett was willing to testify the methamphetamine belonged to him, and even if he made a credible witness, the jury was still presented with the testimony of Deputy Sheriff Gardiner that he saw the bindle of methamphetamine roll out of Petitioner's pants and underwear when he removed his

clothing during the search, which constituted sufficient evidence that Petitioner was guilty of possession of methamphetamine in jail. Likewise, the fact that the jury acquitted Garrett does not mean they had no choice but to convict Petitioner due to mutually antagonistic defenses. The jury could have accepted Petitioner's defense that the methamphetamine did not come out of his clothing but was on the floor of the cell prior to the search which had been open to other inmates all day, and that even if it did come out of his clothing he was wearing state-issued clothes previously worn by other inmates. There is no support for Petitioner's contention that the jury's acceptance of Garrett's defense, that there was no evidence he was ever in possession of the methamphetamine, precluded them from also acquitting Petitioner. Their defenses were not irreconcilable, as it was possible for the jury to find that either, both, or neither of them possessed the methamphetamine. See United States v. Throckmorton, 87 F.3d 1069, 1070 (9th Cir. 1996) (holding that a defendant is entitled to severance based upon mutually antagonistic defenses only if "the core of the codefendant's defense is so irreconcilable with the core of his own defense that the acceptance of the codefendant's theory by the jury precludes acquittal of the defendant.")

Because Petitioner has shown no unfairness arising from the joint trial as a result of an inability to call Garrett as a witness, his claim fails even if clearly established federal law provides for federal habeas relief based on a showing of fundamental unfairness arising from an interference with the ability to present exculpatory evidence. Grisby, 130 F.3d at 370 (holding that a federal habeas petitioner carries a "burden of demonstrating that the state court's denial of his severance motion rendered his trial fundamentally unfair."); Bean, 163 F.3d at 1084 ("[T]he propriety of consolidation rests within the sound discretion of the state trial judge. The simultaneous trial of more than one offense must actually render petitioner's state trial fundamentally unfair and hence, violative of due process before relief pursuant to 28 U.S.C. § 2254 would be appropriate.") His claim that he was denied a fundamentally unfair trial because he and Garrett had mutually antagonistic defenses fails because, as the state court observed, there was sufficient independent evidence Petitioner was in possession of the methamphetamine. See Zafiro, 506 U.S. at 540 ("[I]t is well

13

19cv0528-BEN (BLM)

settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials.") Petitioner's contention that the denial of the opportunity to have Garrett testify at a separate trial that the methamphetamine belonged to him violated his right to call, confront and cross-examine witnesses fails because he has not shown it was reasonably likely Garrett would have testified at a separate trial, and any Confrontation Clause claim was eliminated by the trial judge's redaction of any reference to Petitioner in Garrett's recorded prison calls. See Richardson v. Marsh, 481 U.S. 200, 202 (1987) (approving of joint trials involving the same evidence against multiple defendants involving drug charges and holding that the admission of a codefendant's statement that is "redacted to omit any reference to the defendant" does not raise Confrontation Clause concerns). Thus, even if there is clearly established federal law on these issues, Petitioner has not shown that the state court adjudication of his claim is contrary to, or involves an unreasonable application of, clearly established federal law.

Petitioner is correct that even in the absence of clearly established federal law he can still show that the state court adjudication of his claim is based on an unreasonable determination of the facts in light of the evidence presented in state court proceedings under 28 U.S.C. § 2254(d)(2). However, such a showing is a prerequisite to federal habeas relief. Even if § 2254(d)(1) or (2) is satisfied he must still show that a federal constitutional violation occurred to obtain relief. Fry, 551 U.S. at 119-22; Frantz, 533 F.3d at 735-36. As discussed above, he has failed to show the factual findings relied upon by the state court, in particular that there was no bona fide or likely possibility that Garrett would have testified at his trial, are objectively unreasonable. See Miller-El, 537 U.S. at 340 ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary.") More to the point, as discussed above, even if Petitioner could overcome the provisions of 28 U.S.C. § 2254(d)(1) or (2), he has failed to show a federal constitutional violation occurred as a result of the denial of his motion for severance.

Finally, even if Petitioner could satisfy the provisions of 28 U.S.C. § 2254(d), and even if he could establish that a federal constitutional violation arose from the denial of his

severance motion, he still must show the error had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993); see also Sandoval v. Calderon, 241 F.3d 765, 772 (9th Cir. 2001) (holding that in order to establish fundamental unfairness, a petitioner must show "the impermissible joinder had a substantial and injurious effect or influence in determining the jury's verdict.") Garrett did not present any evidence at their joint trial, but merely argued to the jury that no evidence had been presented to establish beyond a reasonable doubt that he knew about or possessed the methamphetamine found in their shared cell. Even if, as Petitioner contends (see Pet. at 14), Garrett "would testify and take full responsibility for and claim ownership of the methamphetamine found on petitioner and in their shared cell and explain that it was not used, sold, or possessed by petitioner," evidence was produced at trial that some of it was found in Petitioner's possession. Petitioner was not charged with owning or selling it, merely with possessing it. In any case, even in the unlikely event Garrett was willing to testify the methamphetamine was his, and even if he made a credible witness in that regard (an equally unlikely event in light of evidence presented at trial that Garrett said during his recorded jail phone call he was willing to take responsibility for crimes committed by his girlfriend), the jury was still presented with independent evidence Petitioner was found in possession of methamphetamine as charged.

In addition, the fact that the jury acquitted Garrett does not mean they had no choice but to convict Petitioner due to mutually antagonistic defenses. The jury could have accepted Petitioner's defense that the methamphetamine which Deputy Sheriff Gardiner testified he saw roll out of Petitioner's pants and underwear did not come out of Petitioner's clothing but was already on the floor of the cell, which had been open to other inmates all day, and that even if it did come out of his clothing he was wearing state-issued clothes previously worn by other inmates. There is no support for Petitioner's contention that the jury's acceptance of Garrett's defense, that there was no evidence Garrett was ever in possession of the methamphetamine, precluded them from also acquitting Petitioner of the charge of possession of methamphetamine in jail. As set forth above, it was possible for

the jury to find that either, both, or neither of them possessed the methamphetamine irrespective of Garrett's defense. Thus, even assuming Petitioner could demonstrate a federal constitutional violation arising from the denial of his severance motion, he is not entitled to federal habeas relief because he has failed to show that the alleged error had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 637-38; Sandoval, 241 F.3d at 772.

The Court finds that federal habeas relief is unavailable because the state court adjudication of Petitioner's claim is neither contrary to, nor involves an unreasonable application of, clearly established federal law, and is not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. In addition, even if Petitioner could satisfy those standards, he has not shown a federal constitutional violation occurred as a result of the denial of his severance motion, and even if he could any such error is clearly harmless. For these reasons, the Petition for a writ of habeas corpus is **DENIED**.

## IV. Certificate of Appealability

The threshold for granting a Certificate of Appealability is "relatively low." Jennings v. Woodford, 290 F.3d 1006, 1010 (9th Cir. 2002). "[T]he only question is whether the applicant has shown that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Buck v. Davis, 580 U.S. ___, 137 S.Ct. 759, 773 (2017). The Court finds a Certificate of Appealability is not appropriate under that standard.

## V. **CONCLUSION**

Based on the foregoing, the Petition for a Writ of Habeas Corpus (ECF No. 1) is **DENIED** and the Court **DECLINES** to issue a Certificate of Appealability.

DATED: 8/15/2019

HON. ROGER T. BENITEZ
UNITED STATES DISTRICT JUDGE